[S. F. No. 4333.    In Bank.—June 16, 1909.]

# ALEXANDER JOHN MacDONALD, Respondent, v. JOSEPHINE MacDONALD, Appellant.

DIVORCE—EXTREME CRUELTY—GRIEVOUS MENTAL SUFFERING—INJURY TO HEALTH NOT ESSENTIAL.—The wrongful infliction of grievous mental suffering by one party to the marriage upon the other constitutes extreme cruelty under section 94 of the Civil Code, even though no injury to the health of the party thus injured is caused thereby.

ID.—SINGLE ACT OF CRUELTY SUFFICIENT TO WARRANT DIVORCE.—A single act of cruelty may be of such a nature, even where that act consists solely of the making of unfounded charges and cruel imputations, as not only to inflict the most grievous mental suffering, but also to render impossible the subsequent living together of husband and wife upon any such terms as are essential to the accomplishment of the legitimate ends and objects of matrimony.

ID.—FALSE CHARGES IN WRITING BY WIFE AGAINST HUSBAND—SUFFICIENCY OF AS GROUND FOR DIVORCE.—A false charge deliberately and maliciously made in writing by a wife against her husband, for the sole purpose of lowering him in the estimation of his friends and associates and all decent people, to the effect that he is a drunkard, a lewd and dissolute character, a person unfit to be a member of any fraternal organization, or to associate with decent and respectable people, and who had admitted to her that if it were not for his parents he would long ago have adopted the method of living on the earnings of a prostitute with whom, she charged, he had admitted having consorted after his marriage, is sufficient to constitute extreme cruelty, if such conduct of the wife caused her husband grievous mental pain and suffering.

ID.—GRIEVOUS MENTAL SUFFERING QUESTION OF FACT—DETERMINATION OF QUESTION FOR TRIAL COURT—REVIEW ON APPEAL.—Whether in any given case there has been inflicted this "grievous mental suffering" is a mere question of fact, to be deduced from all the circumstances, keeping always in view the intelligence, apparent refinement, and delicacy of sentiment of the complaining party, and no arbitrary rule as to what probative facts shall exist in order to justify a finding of the ultimate fact of its existence can be given. The determination of the question is for the trial court, and its finding will not be disturbed on appeal unless the evidence in support thereof is so slight as to indicate a want of ordinary good judgment and an abuse of discretion by the trial court.

ID.—CORROBORATION OF PARTIES—PREVENTION OF COLLUSION.—The main purpose of section 130 of the Civil Code, which provides that no divorce can be granted upon the default of the defendant, "or

upon the uncorroborated statement, admission or testimony of the parties," is to prevent collusion between the parties.

ID.—CORROBORATION OF TESTIMONY AS TO MENTAL SUFFERING.—Under that section it is not essential that there should be any corroboration of the plaintiff's testimony as to the mental suffering entailed upon him by reason of the acts of the defendant, other than such corroboration as is afforded by the evidence showing the nature and circumstances of the acts, considered in the light of all the circumstances of the case, including the character, temperament, and disposition of the parties.

ID.—INFERENCES OF FACT—NATURE OF CHARGES.—The trial court has the right to draw reasonable inferences from the nature of the false charges made, the circumstances under which they were made, the publicity given them, and the other circumstances of the case and the parties, as to the effect of the charges upon the mind of the party against whom they are made, and if such reasonable inferences are in accord with the party's own testimony as to his mental suffering, there is sufficient corroboration to satisfy the requirements of the law, if corroboration in such a matter be essential.

ID.—CHARGES MADE WITH MALICE AND WITHOUT PROBABLE CAUSE—EVIDENCE.—Assuming that in order to secure a divorce on the ground of cruelty, based upon words unaccompanied by violence, it is incumbent upon the plaintiff to prove that the charges were malicious and without justifiable or probable cause, it is held, that the evidence in this case was sufficient to support the conclusion of the trial court that they were so made.

ID.—CHARGES MADE WHILE PARTIES ARE LIVING APART.—An action for divorce on the ground of extreme cruelty will lie for false charges made by one party to the marriage against the other after they have separated and are living apart. The fact of the separation of the parties is relevant only in the determination of the question whether the charges inflicted grievous mental suffering.

ID.—CONDUCT OF PLAINTIFF NOT JUSTIFYING CHARGES—EVIDENCE.—Upon a review of the evidence, it is held that the trial court was warranted in concluding that the conduct of the plaintiff was not such as to preclude him from complaining of the act of the defendant in making false charges against him, and that the making of such charges was wholly unjustified and constituted extreme cruelty on her part.

ID.—RESIDENCE OF PLAINTIFF—CORROBORATION.—Where there is no evidence to the contrary, the testimony of the plaintiff in an action for a divorce that he was immediately preceding the commencement of the action a resident of the state and a resident of the county in which the action was commenced for the time required by section 128 of the Civil Code, is sufficiently corroborated, if corroboration be required, by the testimony of witnesses who testified as to his reputation for sobriety and industry and his personal habits, whose evidence strongly tended to strengthen and confirm the statements

of the plaintiff in regard to such residence, and indicated that he had been a resident of such county for many years preceding the action.

OPINION OF SUPREME COURT NOT OFFICIALLY PUBLISHED—AUTHORITY OF. —The fact that the opinion of the supreme court in a particular case was not ordered reported in the official reports of the court, cannot be taken to indicate that the court disapproved the doctrine announced therein.

APPEAL from an interlocutory judgment of the Superior Court of the City and County of San Francisco in an action for a divorce. M. C. Sloss, Judge.

The facts are stated in the opinion of the court.

S. V. Costello, and Costello & Costello, for Appellant.

William A. Kelly, for Respondent.

ANGELLOTTI, J.—This is an appeal by defendant from an interlocutory decree in favor of plaintiff in an action for divorce on the ground of extreme cruelty.

1. It is claimed that the complaint did not show cruelty warranting a divorce and that a demurrer interposed for want of facts should have been sustained.

The extreme cruelty alleged is the infliction of grievous mental suffering by an act of defendant done on or about the eleventh day of March, 1903. In this behalf it was alleged substantially as follows: Plaintiff was a member in good standing of Hesperian Parlor of the Native Sons of the Golden West, a fraternal order. Defendant filed with such parlor an affidavit made and verified by her, in which she charged plaintiff "with being a drunkard, a constant habitue of saloons, a lewd and dissolute character, a person unfit to be a member of the Hesperian Parlor, Native Sons of the Golden West, or any other fraternal organization, and a person unfit to associate with decent and respectable people." She further charged that since the date of the marriage, December 3, 1902, plaintiff had not contributed to her support, had made no effort to procure work or provide means for her support, that she had supported him with means supplied by her father, that plaintiff had admitted to her that he had spent a night with a certain prostitute at a place known as Belden Place in

San Francisco, that plaintiff had stated to her that he did not have to work to support her or himself, as said prostitute would support him at any time, and that he had stated to her that if it were not for his parents he would have adopted this mode of livelihood long ago. Each and all of these charges and statements were false, unfounded, and malicious, and were made by defendant for the sole purpose of grieving plaintiff. Such charges became known to many persons in the community and to plaintiff's fellow members in said Hesperian Parlor and were communicated to plaintiff, and by reason thereof he suffered grievous mental pain and anguish and was subjected to great shame.

Defendant's point in this connection is solely that there is only a single act of cruelty alleged, and that the law does not permit a divorce on the ground of extreme cruelty for any single act of violence or abuse. There are decisions of some other states that sustain this claim, but it certainly is not the law in this state. Our statute defines extreme cruelty as "the wrongful infliction of grievous bodily injury or grievous mental suffering upon the other by one party to the marriage." (Civ. Code, sec. 94.) Ever since the decision in *Barnes* v. *Barnes,* 95 Cal. 171, [30 Pac. 298], it has been the accepted law of this state that the wrongful infliction of grievous mental suffering by one party to the marriage upon the other constitutes extreme cruelty under this statute, even though no injury to the health of the party thus injured is caused thereby. It was said in that case, quoting from *Carpenter* v. *Carpenter,* 30 Kan. 743, [46 Am. Rep. 108, 2 Pac. 144]: "It was formerly thought that to constitute extreme cruelty, such as would authorize the granting of a divorce, physical violence is necessary; but the modern and better considered cases have repudiated this doctrine as taking too low and sensual a view of the marriage relation and it is now very generally held that any unjustifiable conduct on the part of either husband or wife, which so grievously wounds the feelings of the other, or so utterly destroys the peace of mind of the other, as to seriously impair the health . . . *or such as utterly destroys the legitimate ends and objects of matrimony, constitutes extreme cruelty under the statutes.*" The court further said: "Section 94 of the Civil Code is in harmony with the law as thus stated, and under it the infliction of grievous mental suffering is extreme

cruelty." In that case the cruelty alleged and for which a divorce was granted was the imputing to plaintiff by defendant, in the presence of others, the grossest immorality and personal impurity. (See, also, Nelson on Divorce and Separation, sec. 276.) It is manifest that a single act of cruelty may be of such a nature, even where that act consists solely of the making of unfounded charges and cruel imputations, as not only to inflict the most grievous mental suffering, but also to render impossible the subsequent living together of husband and wife upon any such terms as are essential to the accomplishment of the legitimate ends and objects of matrimony, if marriage is to be viewed "from a different standpoint than as a mere physical relation." (*Barnes* v. *Barnes,* 95 Cal. 171, [30 Pac. 298].) A false charge deliberately and maliciously made in writing by a wife against her husband, for the sole purpose of lowering him in the estimation of his friends and associates and all decent people, to the effect that he is a drunkard, a lewd and dissolute character, a person unfit to be a member of any fraternal organization, a person unfit to associate with decent and respectable people, a person who had admitted to her that if it were not for his parents he would long ago have adopted the method of living on the earnings of a prostitute, with whom, it was charged, he had admitted having consorted after his marriage, might well bring about such a result. If it does, it certainly measures up to the requirements of our statute. (See, generally, Nelson on Divorce and Separation, secs. 277 and 279.) As we have seen, it was squarely alleged that the conduct of the defendant in this regard did cause him grievous mental pain and suffering. The demurrer was properly overruled.

2. In her answer, defendant expressly admitted the allegations of the complaint in regard to the making of the charges by her against plaintiff. She denied that they became known to many persons in the community or to his brother members of Hesperian Parlor, or that the charges were made for the sole purpose of grieving plaintiff, or that they were at all false or malicious, or that plaintiff was thereby or at all subjected to great shame or to grievous or any mental anguish or suffering. Upon all of these matters, the findings of the trial court were in favor of plaintiff and against defendant.

It was alleged by specifications in the bill of exceptions that the evidence was insufficient to justify the conclusion evidenced by the findings that plaintiff suffered grievous or any mental pain or anguish by reason of the act of defendant, and also the conclusion that such charges were made for the sole purpose of grieving plaintiff, were made known to many persons in the community and to his brother members in Hesperian Parlor, and that they were false, unfounded, and malicious.

No claim is made in the briefs that the evidence was not sufficient to warrant the trial court in finding that the charges so made against plaintiff by defendant were false and unfounded in fact, and that they were made for the sole purpose of grieving plaintiff and subjecting him to shame and contempt, and in view of the record before us we do not see how any such claim could reasonably be made. The evidence to the effect that they were known to his fellow members in Hesperian Parlor is uncontradicted, in fact the evidence shows that such charges were formally investigated by the members of the parlor, and that he was acquitted thereof.

It is strenuously urged that, in view of all the facts, the finding that by reason thereof the plaintiff was occasioned grievous mental suffering is not sufficiently supported by evidence. "Whether in any given case there has been inflicted this 'grievous mental suffering' is a mere question of fact, to be deduced from all the circumstances of each particular case, keeping always in view the intelligence, apparent refinement, and delicacy of sentiment of the complaining party, and no arbitrary rule as to what probative facts shall exist in order to justify a finding of the ultimate facts of its existence can be given. . . . A correct decision must depend—as most cases depend—upon the sound sense and judgment of juries and courts." (*Barnes* v. *Barnes*, 95 Cal. 171, [30 Pac. 298].) From the very nature of the question it results that in its determination the trial judge, who has the parties before him for observation in the light of the evidence, must be invested with a wide range of discretion. It is settled that the finding of the trial court on this question will not be disturbed on appeal unless the evidence in support thereof is so slight as to indicate a want of ordinary good judgment and an abuse of discretion by the trial court. (*Andrews* v. *Andrews*, 120 Cal. 184, 187, [52 Pac. 298]; *Avery* v. *Avery*, 148 Cal. 239,

244, [82 Pac. 967].)  This certainly cannot be held to be the situation here, when we consider the general nature of the charges made against plaintiff by his wife, the persons to whom such charges were communicated, the falsity of the charges, and plaintiff's knowledge of the making and circulation thereof.  Defendant's principal claim in this connection is that the evidence of plaintiff to the effect that he was occasioned grievous mental suffering by reason of the making of these charges by his wife was not corroborated by other testimony, and that corroboration thereof was required by section 130 of the Civil Code, which provides that no divorce can be granted upon the default of the defendant, "or upon the uncorroborated statement, admission, or testimony of the parties."  The main purpose of this section is to prevent collusion between the parties.  (*Andrews* v. *Andrews,* 120 Cal. 184, [52 Pac. 298] ; *Avery* v. *Avery,* 148 Cal. 239, [82 Pac. 967].) We are aware of no case in this state where it has been squarely held that to satisfy the requirements of this section, which has existed in its present form ever since 1873, it is essential that there should be any corroboration of the plaintiff's testimony as to the mental suffering entailed upon him by reason of the acts of the defendant, other than such corroboration as is afforded by the evidence showing the nature and circumstances of the acts, considered in the light of all the circumstances of the case, including the character, temperament, and disposition of the parties.  We do not understand the case of *Haley* v. *Haley,* 67 Cal. 24, [7 Pac. 3], as holding this, although there are one or two expressions in the opinion tending to support the defendant's contention.  The principal difficulty in that case was that, in the view of this court, there was no corroboration of the evidence of plaintiff to the effect that the defendant had willfully and wrongfully made a false charge of adultery against her.  With reference to the fact of grievous mental suffering, in view of the nature of such a question, we do not see how any other corroboration could ordinarily be had.  Mental suffering is generally known only to the sufferer.  "The common judgment of mankind recognizes the fact that there may be unfounded charges and cruel imputations which are not more easily borne than physical bruises, and the necessary effect of which is to cause great mental distress to the person against whom they are made."

(*Barnes* v. *Barnes,* 95 Cal. 171, [30 Pac. 298].)   We have already quoted from the case last cited to the effect that the answer to the question whether grievous mental suffering has been inflicted by the acts complained of is to be deduced from all the circumstances of each particular case.   A court undoubtedly has the right to draw reasonable inferences from the nature of the false charges made, the circumstances under which they were made, the publicity given them, and the other circumstances of the case and the parties, as to the effect of the charges upon the mind of the party against whom they are made, and if such reasonable inferences are in accord with the party's own testimony as to his mental suffering, there is sufficient corroboration to satisfy the requirements of the law, if corroboration in such a matter be essential.   The decision in *Haley* v. *Haley,* (Cal.) 14 Pac. 92, a later controversy between the same parties as those in *Haley* v. *Haley,* 67 Cal. 24, [7 Pac. 3], decides against defendant the exact point made by her in this behalf.   The fact that this case was not ordered reported in the official reports cannot be taken to indicate, as claimed by defendant, that this court disapproved the doctrine announced therein.   We are satisfied that the decision there given on this point was correct.   The case of *Smith* v. *Smith,* 124 Cal. 651, [57 Pac. 573], goes simply to the question of the sufficiency of a complaint, holding that "grievous bodily injury" or "grievous mental suffering" must be alleged.

3. Defendant suggests that it is well settled that in order to secure a divorce on the ground of cruelty, based upon words unaccompanied by violence, it is incumbent upon plaintiff to prove that the charges were malicious and without justifiable or probable cause.   As to this, it is sufficient to say that, assuming the law to be as stated, there was sufficient evidence to support the conclusion of the trial court that they were so made in this case.

4. It is further claimed that an action for divorce on the ground of extreme cruelty will not lie for false charges made by one party against another after they have separated and are living apart.   In this case, the parties were married on December 3, 1902, and lived together as husband and wife only until March 1, 1903.   The charges were made on or about March 11, 1903.   In Nelson on Divorce and Separation at

section 277, it is said that the fact that the parties are separated at the time the charges are made does not change the nature of the cruelty, for separation does not relieve the husband of the duty to protect his wife's reputation. In *Smith* v. *Smith*, 8 Or. 100, accusations of adultery were made while the parties were living separate and apart. The court, in reply to the contention of counsel that the evidence did not show sufficient ground for divorce, because the accusations were made after the parties had separated and ceased to live together as husband and wife, said: "We think this makes no difference, for neither a husband nor wife can claim a right to continue the marriage relation while falsely charging the other with unchastity." In *Haley* v. *Haley*, (Cal) 14 Pac. 92, the divorce was granted for extreme cruelty consisting of a false and scandalous charge made after the parties had separated. While there are one or two opinions from other states which contain expressions tending to give some support to defendant's claim in this behalf, we think the better doctrine is that the mere fact that the parties are living separate and apart when the false charges are maliciously made by one spouse against the other does not necessarily prevent them constituting extreme cruelty, and is relevant only in the determination of the question whether they inflicted grievous mental suffering. This was practically held in *Valensin* v. *Valensin*, 73 Cal. 106, [14 Pac. 397], where the court, speaking through Mr. Justice Temple, said: "Whether the false and malicious charge made after the actual separation of the parties would be less apt to inflict grievous mental anguish for that reason, was for the trial court to determine, in view of all the facts."

5. It is alleged that the evidence shows plaintiff to have been so greatly at fault that the court should have denied him relief. The answer contained no allegation by way of recrimination, and it can hardly be claimed that the evidence was such as to compel the conclusion that plaintiff had been guilty of conduct constituting a cause of divorce in favor of the defendant. The evidence of plaintiff shows that the parties quarreled on the day of separation, and that the plaintiff was angry and left defendant, telling her that she could go home, could go her way and he would go his. The defendant attributes a little stronger language to plaintiff on this occasion,

CLV Cal.—43

but it is denied by plaintiff, and, in view of the findings of the trial court, the version most favorable to plaintiff must be adopted here. It cannot be held, in view of the findings, that he believed that she would want, by reason of his absence, for any of the necessities of life. As a matter of fact, it appears that he himself was then without employment and without money, and that he had every reason to believe that her father, who had apparently been most liberal in the way of giving financial assistance during their married life, would furnish her all necessary aid and care. There is nothing to indicate that the father did not do so. The plaintiff further testified that he expected to make up with his wife and return to her, until she made these charges against him. Upon the record before us, we cannot hold that the trial court was not warranted in concluding that his conduct was not such as to preclude him from complaining of the act of defendant, and that the making of these charges by defendant was wholly unjustified, and constituted extreme cruelty on her part. To hold otherwise would be, it appears to us, a usurpation of the functions of a trial judge.

6. It is urged finally that there was no satisfactory evidence that the plaintiff was a resident of the city and county of San Francisco, in which the action was commenced, for three months next preceding the commencement of the action, or a resident of the state of California for one year next preceding such commencement. Section 128 of the Civil Code provides that a divorce must not be granted unless these conditions as to residence on the part of plaintiff exist. The evidence given by plaintiff in regard to this matter was plainly, to the effect that he was a resident of the city and county of San Francisco for at least one year next preceding the commencement of the action, and it was not contradicted by any other evidence. The real point in this connection appears to be that plaintiff's evidence in this regard was not corroborated. If we assume that, under section 130 of the Civil Code, corroboration of the plaintiff's testimony on the question of residence was required, we think sufficient corroboration was to be found in the evidence of some of the many witnesses who testified as to his reputation for sobriety and industry, and his personal habits. Their evidence strongly tended to strengthen and confirm the statements of plaintiff in regard to such residence,

and indicated that he had been a resident of San Francisco for many years preceding the action. (See *Andrews* v. *Andrews,* 120 Cal. 184, 186, [52 Pac. 298] ; *Avery* v. *Avery,* 148 Cal. 239, 243, [82 Pac. 967].) There was not an atom of evidence to indicate, as suggested by defendant, that plaintiff ever resided in Solano County prior to the commencement of this action.

The judgment is affirmed.

Shaw, J., Henshaw, J., Melvin, J., Lorigan, J., and Beatty, C. J., concurred.